UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                         :
                                                               :   Chapter 7
   **KOSSOFF PLLC,**                                           :
                                                               :   Case No. 21-10699 (DSJ)
                                    Debtor.                    :
-----------------------------------------------------------------x
**ALBERT TOGUT**, Not Individually but Solely in               :
His Capacity as Chapter 7 Trustee of the Estate of             :
Kossoff PLLC,                                                  :
                                                               :   Adv. Pro. No. 22-01158 (DSJ)
                                    Plaintiff,                 :
                                                               :
                         v.                                    :
                                                               :
**ROC LE TRIOMPHE ASSOCIATES LLC,**                            :
**HAMPTON MANAGEMENT CO., LLC,**                               :
**and MITCHELL H. KOSSOFF**                                    :
                                                               :
                                    Defendants.                :
-----------------------------------------------------------------x

## DECISION AND ORDER PARTIALLY GRANTING AND
## PARTIALLY DENYING MOTION FOR JUDGMENT ON THE PLEADINGS

**APPEARANCES:**

TOGUT, SEGAL & SEGAL
*Counsel for the Trustee Albert Togut, not individually but in his capacity as Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
By:   Neil Berger
      Minta Nester
      John Gallego

PRYOR CASHMAN LLP
*Counsel for Defendants Roc Le Triomphe Associates LLC and Hampton Management Co. LLC*
7 Times Square
New York, New York 10036
By:   Richard Levy, Jr.
      Andrew S. Richmond

EMMET, MARVIN & MARTIN, LLP
*Counsel for Columbus Properties, Inc. and Colonnade Management*

1

120 Broadway # 32
New York, NY 10271
By:     Edward M. Fox

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Motion of defendants Roc Le Triomphe Associates LLC ("**Roc**") and Hampton Management Co., LLC ("**Hampton**," and together with Roc, the "**Movants**") seeking judgment on the pleadings dismissing the claims against them in whole or in part [ECF No. 57] ("**Motion**"). The Motion seeks dismissal based on defenses including holder in due course; good faith; fair consideration; and *in pari delicto*. The Chapter 7 trustee and plaintiff, Albert Togut ("**Trustee**"), filed an opposition to the Motion [ECF No. 62] ("**Opposition**") that addresses each of the Movants' arguments in turn, and the Movants filed a reply [ECF No. 64] ("**Reply**"). After several adjournments, the Court heard oral arguments for and against the Motion on March 28, 2024 (the "**Hearing**"). For the reasons discussed below, the Motion is denied, except with respect to the Trustee's unjust enrichment claim, which is hereby dismissed.

## BACKGROUND

*Overview of the Main Bankruptcy Case*

This Decision discusses only the case background that is relevant to the motion it resolves, while assuming familiarity with the broader background of the main Kossoff PLLC bankruptcy case, No. 21-10699-DSJ. Mitchell Kossoff ("**Mr. Kossoff**") was the principal of the debtor, Kossoff PLLC (the "**Debtor**"), a real estate law firm that has since ceased all operations. On April 13, 2021, after discovering that Mr. Kossoff had apparently misappropriated client funds held in the firm's trust account, creditors of the Debtor filed an involuntary Chapter 7 petition (the "**Petition**") against the Debtor in the United States Bankruptcy Court for the Southern District of New York.

2

Mr. Kossoff was the subject of a criminal investigation in connection with the reportedly missing funds and pleaded guilty to criminal charges alleging that he had misappropriated at least $14.5 million in client funds. Early in the main bankruptcy case, Albert Togut was appointed as Chapter 7 Trustee. [Main Case, ECF No. 15]. The Trustee has brought numerous adversary proceedings seeking to recover allegedly preferential payments and/or fraudulent transfers of the Debtor's funds.

## FACTS

The Trustee filed the complaint [ECF No. 1] (the "**Complaint**") commencing this adversary proceeding on October 17, 2022. The Complaint seeks to avoid and recover transfers made by the Debtor to the Movants, totaling not less than $1,616,797.55, in connection with Mr. Kossoff's lease of his personal family residence. The Complaint asserts claims based in actual and constructive fraud under both the Bankruptcy Code and applicable New York state law; allegedly preferential transfers pursuant to section 547 of the Bankruptcy Code; and a claim for unjust enrichment.

The Movants filed their Answer and Affirmative Defenses on May 16, 2023 [ECF No. 48] ("**Answer**"), asserting several affirmative defenses, including: (i) failure to state a claim; (ii) fair consideration; (iii) good faith; (iv) *in pari delicto*; (v) lack of standing; and (vi) holder in due course.

***The Lease.***

On March 1, 2008, Mr. Kossoff entered into an agreement with Roc to lease a residential apartment located in the Le Triomphe building in New York, New York (the "Lease"). *See* Compl. ¶ 23. At all relevant times, Roc owned the Le Triomphe building, and Hampton provided management services to Roc. *See* Compl. ¶ 25. Mr. Kossoff signed the Lease in his individual

3

capacity, and the apartment ("**Apartment**") served as Mr. Kossoff's and his immediate family members' primary residence. *See* Compl. at ¶¶ 24, 26.

In January of 2019, Mr. Kossoff, in his individual capacity, and Hampton, on behalf of Roc, executed a two-year extension of the Lease (the "**Two-Year Extension**"), in which Mr. Kossoff confirmed to the Movants that there had been no change in occupancy of the Apartment and absent written notification to the contrary, "the individual(s) named in the Lease as occupant(s) of the apartment shall continue to be the only occupant(s) of the apartment during the Term Extension Period." *See* Compl. ¶¶ 27–29.

In February 2021, Mr. Kossoff, in his individual capacity, executed a seventeen-month extension (the "**Seventeen-Month Extension**") of the Lease set to expire on July 31, 2022. *See* Compl. ¶ 36. Preceding this agreement, Mr. Kossoff requested a three-month rent credit spread over the term of a new fifteen-month renewal, and, in his communications with Hampton, requested a late fee waiver stating that "no late charges will be assessed if rent is paid within the month it is due." *See* Compl. at 33–34.

***The Debtor's Alleged Pre-Petition Transfers.***

The Complaint alleges that since at least 2014 and continuing up until the eve of bankruptcy, Mr. Kossoff caused the Debtor to make payments to the Movants either from the Debtor's bank account directly, (the "**Direct Payments**") or indirectly, whereby Mr. Kossoff would allegedly transfer funds from the Debtor's bank account to his own bank account, and then to the Movants (the "**Indirect Payments**" together with the Direct Payments, the "**Avoidable Transfers**"). *See* Compl. ¶¶ 40, 43.

***The Motion, Opposition, and Reply.***

4

The Movants assert the following five arguments for judgment on the pleadings in their favor: (1) Movants' status as holders in due course defeats the avoidance and recovery claims; (2) the Trustee cannot recover the indirect payments as fraudulent transfers or preferences under Section 550(b) of the Bankruptcy Code; (3) the Trustee cannot avoid any constructively fraudulent transfers that preceded the two-year federal reach back period; (4) the Trustee cannot transform the subsequent transferees of indirect payments into the equivalent of initial transferees as a matter of law[1]; and (5) the Trustee's cause of action for unjust enrichment fails as a matter of law. The Trustee's Opposition attempts to refute each of the Movants' arguments and asserts that the Motion asks the Court to resolve issues that are factual in nature and not appropriate for resolution on a pre-discovery motion. The Movants' Reply largely reiterates the arguments raised in the Motion and attempts to rebut those raised in the Opposition.

## DISCUSSION

**1. Governing Standard.**

Movants seek judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("**Rule 12(c)**"), which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b). "In deciding a Rule 12(c) motion, courts apply the same standard as that applicable to a motion under [Fed. R. Civ. P] Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *See Katzenstein v. VIII SV5556 Lender, LLC (In re St. Vincent's Cath. Med. Ctrs. of N.Y.)*, 440 B.R. 587, 593 (Bankr. S.D.N.Y. 2010). "Accordingly, judgment on the pleadings is appropriate if, from the pleadings, material facts are undisputed and the moving party is entitled to judgment as a matter of law." *See id.* "To survive a Rule 12(c) motion a 'complaint must contain sufficient factual matter, accepted as true, to state a

---

[1] This argument has been resolved. *See* Opposition at ¶¶ 70–77; *see also* Reply at 10–11.

5

claim to relief that is plausible on its face.'" *See Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 528 B.R. 598, 605 (Bankr. S.D.N.Y. 2015) *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 66 (2d Cir. 2016) (citing *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 218 (2d Cir. 2013)).

The Rule 12(b)(6) standard requires only that a party plead "a short and plain statement of the claim with sufficient factual 'heft to sho[w] that the pleader is entitled to relief.'" *See In re Roman Cath. Diocese of Rockville Ctr.*, 650 B.R. 765 at 777 (Bankr. S.D.N.Y. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The claimant must allege "enough facts to state a claim for relief that is plausible on its face," which requires "more than a sheer possibility that a defendant has acted unlawfully." *See Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also In re Residential Capital, LLC*, 531 B.R. 1, 12 (Bankr. S.D.N.Y. 2015) (citing *Iqbal*, 556 U.S. at 678–79) ("A claim is plausible when the factual allegations permit 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' […] A claim that pleads only facts that are 'merely consistent with a defendant's liability' does not meet the plausibility requirement."). A complaint is subject to dismissal under the Rule 12(b)(6) standard where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *See Bell Atl. Corp.*, 550 U.S. at 558.

To survive a motion to dismiss, a plaintiff is not required to plead facts that negate all possible affirmative defenses. *See Constantini v. Hartford Life & Accident Ins. Co.*, No. 21 CIV. 6826 (LGS), 2022 WL 1910137, at *1 (S.D.N.Y. June 3, 2022) (citing *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) ("Ordinarily, a motion to dismiss based on an affirmative defense will not result in dismissal of a complaint because a plaintiff is not required to plead facts

6

negating all possible affirmative defenses."). That being said, "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *See Whiteside*, 995 F.3d at 319. This occurs where the complaint "set[s] forth everything necessary to satisfy the affirmative defense, such as when the complaint plainly reveals that an action is untimely[.]" *See Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 475 (S.D.N.Y. 2009) (citation omitted).

### 2. Movants' Purported Status as Holders in Due Course.

The Motion argues that the Movants' status as holders in due course defeats the Trustee's avoidance and recovery claims against checks drawn on the bank accounts of the Debtor or Mr. Kossoff, totaling $1,562,280.49. *See* Motion at 10. "Pursuant to N.Y.U.C.C. § 3-302, [a] holder in due course is a holder who takes the instrument (a) for value;[2] and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." *Safdieh v. Citibank, N.A.*, No. 20-cv-3073, 2023 WL 5941962, at *5 (E.D.N.Y. Mar. 13, 2023) (citing *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 56 (2d Cir. 1982)). If the above three requirements are met, the holder qualifies as a holder in due course, and as such, takes the instrument "free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt [with certain exceptions]." *See Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.)*, 379 B.R. 425, 437 (Bankr. S.D.N.Y. 2007) (quoting N.Y. U.C.C. § 3-305).

To determine whether a holder has notice of a claim or defense to an instrument, the Second Circuit has instructed that a "'subjective test of actual knowledge rather than an objective test which might involve constructive knowledge'" be applied. *See A.I. Trade Fin., Inc. v.*

---

[2] It is unnecessary for the Court to address the parties' arguments regarding value considering the Court's decision regarding the notice and good faith elements.

*Laminaciones de Lesaca, S.A.*, 41 F.3d 830, 837 (2d Cir. 1994) (quoting *Carrefour U.S.A. Properties Inc. v. 110 Sand Co.*, 918 F.2d 345, 347 (2d Cir.1990)). Courts are to consider what the holder "actually knew, not by speculation as to what they had reason to know, or what would have aroused the suspicion of a reasonable person in their circumstances[.]" *Id.* (quoting *Hartford Accident & Indem. Co. v. Am. Express Co.*, 74 N.Y.2d 153, 163 (1989)). Good faith requires consideration of a very similar standard: whether a party acted in good faith "turns on what the holder actually knew of the transaction" and requires only honesty, without looking to whether the holder exercised due care. *See In re AppOnline.Com, Inc.*, 290 B.R. 1, 13 (Bankr. E.D.N.Y. 2003) (citing *Regent Corp., U.S.A. v. Azmat Bangladesh, Ltd.*, 253 A.D.2d 134, 142 (1st Dep't 1999); *Bank of N.Y. v. Welz*, 118 Misc.2d 645, 460 (Sup. Ct. N.Y. Co. 1983)).

The Motion argues, among other things, that the Movants: (1) did not have notice of any defense or claim against the rent checks for reasons including that the Debtor's signature on some checks is not sufficient to raise suspicion and (2) acted in good faith because the Movants did not have knowledge of Mr. Kossoff's wrongdoing at the time that they received the checks. *See* Motion at 11–16. The Opposition argues that the Complaint pleads facts that allow for an inference of knowledge and does not plead facts establishing a lack of knowledge or the presence of good faith. *See* Opposition ¶ 40.

The Motion fails because neither lack of notice nor the presence of good faith on behalf of the Movants appear on the face of the Complaint, as is required to justify entry of judgment on the pleadings based on the affirmative defense that Movants assert.[3] Both the notice and good faith

---

[3] The parties also raised arguments relating to whether holder in due course status may be applied in bankruptcy proceedings. The Motion's denial on other grounds makes it unnecessary to resolve these arguments at this stage. This decision leaves open any possible future arguments regarding the applicability of holder in due course defenses in bankruptcy proceedings.

8

elements require the Court to consider the Movants' *actual* knowledge. The Complaint does not plead that the Movants were unaware of Mr. Kossoff's wrongdoing, as would be required to resolve this affirmative defense in favor of the Movants pre-discovery. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 B.R. 653, 678–79 (Bankr. S.D.N.Y. 2023) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."). The Movants' knowledge, or lack therof, of Mr. Kossoff's misconduct presents questions of fact to be developed through discovery and then at trial, or, conceivably, motions for summary judgment.[4] Thus, the Court denies the Motion with respect to the holder in due course defense.

### 3. Good Faith Defense.

The Motion argues that the Trustee cannot recover the Indirect Payments as fraudulent transfers or preferences under section 550(b) of the Bankruptcy Code because of Movants' asserted good faith in their dealings with the Debtor and/or Mr. Kossoff. *See* Motion at 16. Section 550(a) states, in relevant part, that to the extent a transfer is avoided as a fraudulent or preferential transfer, the trustee may recover, for the benefit of the estate, the property transferred from the initial transferee of the transfer or any immediate or mediate transferee of such initial transferee. *See* 11 U.S.C. § 550(a). There is, however, an exception to Section 550(a): Section 550(b) states that the trustee may not recover property from an immediate or mediate transferee who takes for value, in

---

[4] *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citing *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n. 2 (2d Cir. 2016) (In considering a 12(b)(6) motion, courts "do not look beyond 'facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken.'").

9

good faith, and without knowledge of the voidability of the transfer avoided. *See* 11 U.S.C. § 550(b). Good faith is an affirmative defense that the transferee bears the burden of pleading; the Trustee is not required to plead the Movants' lack of good faith. *See In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 196 (2d Cir. 2021).

The good faith and notice elements of the Section 550(b) defense are heavily intertwined, and as such are approached in a three-step inquiry considering: (1) what the defendant knew, subjectively; (2) whether these facts put the transferee on inquiry notice of the fraudulent purpose behind the transaction; and (3) once the court determines that a transferee was put on inquiry notice, whether "'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer." *See id.* at 191–92 (citing *In re Nieves*, 648 F.3d 232, 238 (4th Cir. 2011); *In re Bayou Grp., LLC*, 439 B.R. 284, 310 (S.D.N.Y. 2010); *In re M & L Bus. Mach. Co.*, 84 F.3d 1330, 1338 (10th Cir. 1996); quoting *In re Agric. Rsch. & Tech. Grp., Inc.*, 916 F.2d 528, 536 (9th Cir. 1990)).

Whether the Movants are entitled to prevail based on Section 550(b)'s good faith defense cannot be decided at this time. The elements of the defense have not been pleaded on the face of the Complaint and development of the factual record is necessary to discern whether these elements have been met. As stated in Section 2 of this decision, the Complaint does not plead that the Movants were unaware of any facts that might have put them on notice of the allegedly fraudulent purpose of the transactions. Determining what the Movants knew at the time they accepted the Indirect Payments will require a fact-intensive inquiry that is not possible or permissible on this pre-discovery motion. *See Sec. Inv. Prot. Corp.*, 654 B.R. at 679 (The inquiry notice standard "requires a 'fact intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'")

10

(citation omitted). Similarly, the Court cannot make a determination as to the element of good faith, which is closely linked, if not dependent on, the notice element, without further development of the factual record. *See id.* ("[G]ood faith is a fact-intensive inquiry that almost always requires a trial."). Thus, the Court denies the Motion with respect to the Section 550(b) good faith defense.

### 4. NYDCL §§ 273–75.

Counts I and III of the Complaint seek the avoidance and recovery of pre-petition transfers to the Movants, made prior to April 4, 2020, as constructive fraudulent conveyances under New York Debtor Creditor Law ("**DCL**") §§ 273, 274, and 275.[5] The Second Circuit has instructed that under the DCL, a conveyance by a debtor may be deemed constructively fraudulent if, among other things, it is made without 'fair consideration.' *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005). Under DCL § 272(a), 'fair consideration' is given for property or an obligation when "in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." *In re Dreier LLP*, 452 B.R. 391, 441 (Bankr. S.D.N.Y. 2011) (quoting DCL § 272(a)).

While the Complaint does plead a 'lack of fair equivalent value' by asserting that the Debtor did not receive anything in exchange for its transfers to the Movants,[6] the Movants argue that the Complaint does not demonstrate the Movants' lack of good faith, and as such has not adequately alleged a lack of fair consideration. *See* Motion at 19–20. The Opposition argues that the Complaint adequately pleads a lack of good faith by alleging that the Movants accepted

---

[5] New York's Uniform Fraudulent Conveyance Act has since been replaced by New York's Uniform Voidable Transactions Act. The latter contains substantive changes to the relevant sections of New York Debtor Creditor Law but is applicable only to transfers made and obligations incurred after April 4, 2020. *See* N.Y. Legis. Assemb. A-5622 § 7, Reg. Sess. 2019-2020 (2019).

[6] *See In re Nanobeak Biotech Inc.*, 656 B.R. 350, 363 (Bankr. S.D.N.Y. 2024) (finding that lack of fair equivalent value and fair consideration were adequately pleaded where a Trustee alleged in a complaint that a business debtor received nothing in exchange for transfers it was caused to make by its former CEO to satisfy the former CEO's personal rent obligations).

11

payments from the Debtor despite knowing the Lease and subsequent extensions had been executed by Mr. Kossoff individually, and that the Apartment was the primary residence of his family. *See* Opposition ¶ 65. However, the Opposition further asserts that even if the Complaint failed to plead good faith, dismissal would not be warranted because a complaint is required to plead only one element of fair consideration in order to survive at the motion to dismiss stage. *See* Opposition ¶ 66.

Case law establishes that the Trustee is not required to plead both elements of the absence of fair consideration in the Complaint. Courts in this District that have considered this issue have determined that because both fair equivalence and good faith are required, showing an absence of one element is sufficient to survive a motion to dismiss. *E.g., In re Dreier LLP*, 452 B.R. at 445; *see also In re Saadeh v. Kagan*, No. 20-CV-01945, 2021 WL 5827942, at *6 (S.D.N.Y. Oct. 20, 2021) (citation omitted); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 110 (Bankr. S.D.N.Y. 2011) (citing *Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.)*, 404 B.R. 710, 716 (Bankr. E.D.N.Y. 2009)); *In re Eight-115 Assocs., LLC*, 650 B.R. 43, 55 (Bankr. S.D.N.Y. 2023). Here, the Trustee has adequately pleaded a lack of fair equivalent value, and thus the Trustee has adequately pleaded counts I and III of the Complaint under DCL §§ 273–275 whether the Complaint's allegations are or are not sufficient to establish Movants' good faith.

### 5. Unjust Enrichment.

Count X of the Complaint asserts a claim for unjust enrichment seeking recovery in an amount that reflects the value of the Movants' unjust enrichment resulting from the Avoidable Transfers and any other benefits fraudulently conferred upon the Movants by the Debtor that the Trustee may uncover during discovery. *See* Compl. ¶ 156. To plead unjust enrichment, the complaint must allege facts to support the following elements: "(1) the other party was enriched,

(2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *See In re Nanobeak Biotech Inc.*, 656 B.R. at 368 (insertion in original) (internal quotation marks omitted) (citations omitted). Courts place emphasis on the third element as the "essential inquiry" in an unjust enrichment action. *See id.* (citing *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421 (1972)).

The Trustee asserts that the Complaint alleges: (1) the Movants were enriched because they received the Avoidable Transfers from the Debtor; (2) the transfers were received at the Debtor's expense because the Debtor was not obligated to make the transfers and received nothing in exchange for the transfers; and (3) equity favors restitution because the funds used to make the Avoidable Transfers should have been available to the Debtor's creditors, not Mr. Kossoff's personal creditors. *See* Opposition ¶ 80.

The Motion argues[7] that the unjust enrichment claim is largely time barred, that the Trustee stands in Debtor's shoes and as a matter of law lacks standing to prosecute its unjust enrichment claim under the so-called *Wagoner* rule, and that the claim is barred by the doctrine of *in pari delicto*.[8] *See* Motion at 29–33. The Motion argues that *Wagoner* and *in pari delicto* are applicable because Mr. Kossoff's wrongdoing is imputed to the Debtor as its principal, and as such the Debtor "essentially took part in" the alleged misconduct on which the Trustee seeks relief. *See* Motion at 29–31. The Opposition argues that the *Wagoner* rule and *in pari delicto* are fact-intensive affirmative defenses that may be subject to the application of the "adverse interest" exception (explained below), and as such these defenses should not be the basis for a Rule 12(c) dismissal.

---

[7] The Motion raises an additional argument against the Trustee's unjust enrichment claim, asserting that the existence of the Lease defeats the claim. The Court does not find it necessary to address this argument in light of its dismissal of the unjust enrichment claim for reasons stated herein.

[8] Both the *Wagoner* rule and the doctrine of *in pari delicto* are explained in the next section of this decision.

13

*See* Opposition at ¶ 83. The Reply argues that the adverse interest exception is inapplicable due to the sole actor rule. *See* Reply at 13–14.

### A. The Unjust Enrichment Claim is Largely Time Barred.

The statute of limitations applicable to a claim for unjust enrichment under New York law varies depending on "the nature of the substantive remedy plaintiff seeks." *See Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) (citing *Loengard v. Santa Fe Indus., Inc.*, 70 N.Y.2d 262, 266 (1987)). Where the plaintiff seeks an equitable remedy, the statute of limitations is six years; where the plaintiff seeks monetary damages, the statute of limitations is only three years, with the applicable limitations period in both instances running upon the occurrence of the wrongful act rather than from the time "the facts constituting fraud are discovered." *See id.* (citing *Ingrami v. Rovner*, 45 A.D.3d 806, 808 (2d Dep't 2007); *Lia v. Saporito*, 909 F.Supp.2d 149, 167 (E.D.N.Y. 2012); *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 261 (S.D.N.Y. 2008); *Grynberg v. Eni S.p.A.*, No. 06 Civ. 6495 (RLC), 2007 WL 2584727, at *3 (S.D.N.Y. Sept. 5, 2007); *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013)).

Paragraph 156 of the Complaint states,

> Plaintiff is entitled to a judgment allowing the Plaintiff to recover, for the benefit of the Debtor's estate, an amount to be determined at trial that reflects the value of Defendants Hampton and Roc's unjust enrichment resulting from the Avoidable Transfers, including the value of any other benefits fraudulently conferred upon such Defendants by the Debtor that Plaintiff may uncover during discovery.

Compl. ¶ 156.

This contention seemingly seeks a monetary judgment rather than an equitable remedy. The Opposition failed to respond to the Motion's arguments on this point. As such, the Court is persuaded by the Motion that the applicable limitations period extends only to three years prior to the filing of the Petition.

Pursuant to Section 108(a) of the Bankruptcy Code, a statute of limitations period fixed by applicable nonbankruptcy law that expires between the petition date and the date that is two years after the entry of an order for relief is tolled until the latter date. *See* 11 U.S.C. § 108(a). Here, the Petition was filed on April 13, 2021, and the applicable statute of limitations period is three years. As such, the oldest transfers that the Trustee can reach in its unjust enrichment claim are those which occurred on or after April 13, 2018. The three-year statute of limitations applicable to transfers which occurred prior to April 13, 2018 expired before the filing of the Petition and as such do not fall within the purview of Section 108(a). The Court therefore holds that the only timely aspects of the unjust enrichment claim involve the Direct Payments dated March 19, 2021, in the amount of $35,417.06; April 15, 2020, in the amount of $20,941.00; and May 7, 2020, in the amount of $19,291.00. Three of the Indirect Payments made on February 5, 2018, March 2, 2018, and April 2, 2018, each in the amount of $19,200.00, are time-barred as well.

### B. *In Pari Delicto* and the Wagoner Rule.

The common law doctrine of *in pari delicto* "generally precludes a wrongdoer from recovering from another wrongdoer[,]" and "bars a party that has been injured as a result of its own intentional wrongdoing from recovering for those injuries from another party whose equal or lesser fault contributed to the loss." *See Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011); *In re Lehr Constr. Corp.*, 551 B.R. 732, 738 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 66 (2d Cir. 2016). "Traditional agency principles play an important role in an *in pari delicto* analysis ... namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principles." *See In re Lehr Constr. Corp.*, 551 B.R. at 738 (citing *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010)).

15

In federal court, the *in pari delicto* principle is reflected in the *Wagoner* rule, which acts as a limitation on standing, and deprives the trustee of standing "without regard to the relative degree of fault by the debtor's management or the third party." *See In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 423 n. 5 (Bankr. S.D.N.Y. 2005); *Kirschner*, 15. N.Y.3d at 459 n.3. The *Wagoner* rule provides that "a claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir.1991) (citation omitted). Under *Wagoner*, a trustee, who stands in the shoes of the debtor, lacks standing to recover for a wrong that the debtor participated in. *See In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013). "This rule gives effect to 'the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation.'" *See In re Allou Distributors, Inc.*, 387 B.R. 365, 387 (Bankr. E.D.N.Y. 2008) (citing *Breeden v. Kirkpatrick and Lockhart L.L.P. (In re Bennett Funding Group, Inc.)*, 336 F.3d 94, 100 (2d Cir. 2003)).

The complex case law in this area requires consideration of whether an exception to both the *Wagoner* and the *in pari delicto* doctrines applies and defeats the Motion, and/or whether an exception to that exception saves the Motion. New York law recognizes an adverse interest exception, applicable to both the *Wagoner* rule and *in pari delicto*, which "rebuts the usual presumption that the bad acts of managers acting within the scope of their employment are imputed to the corporation." *See In re TS Emp., Inc.*, 597 B.R. 543, 552 (Bankr. S.D.N.Y. 2019); *see also In re Allou Distributors, Inc.*, 387 B.R. at 390–393. "Under the exception, management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation." *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000) (citation omitted). The adverse interest exception is narrow, and applied only

where the agent has "totally abandoned his principal's interests and is acting *entirely* for his own or another's purposes," such as in cases of "outright theft or looting or embezzlement" i.e., "where the fraud is committed against a corporation rather than on its behalf." *See In re TS Emp., Inc.*, 597 B.R. at 552 (citation omitted) (internal quotation marks omitted); *In re Firestar Diamond, Inc.*, 654 B.R. 836, 881–82 (Bankr. S.D.N.Y. 2023). Were it not for a further exception to this exception, this decision would closely examine whether the adverse interest exception saves the Trustee's unjust enrichment claim.

The adverse interest exception is curtailed by the 'sole-actor rule,' which lifts the exception's bar to imputation in cases where the principal is a corporation, and the agent is its sole shareholder. *See In re Lehr Constr. Corp.*, 528 B.R. at 610; *In re 1031 Tax Grp., LLC*, 420 B.R. 178, 202 (Bankr. S.D.N.Y. 2009); *In re Allou Distributors, Inc.*, 387 B.R. at 387; *In re Grumman Olson Indus., Inc.*, 329 B.R. at 425; *In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 696 (Bankr. S.D.N.Y. 2008). Under this "sole actor rule," courts "impute[] the agent's knowledge to the principal notwithstanding the agent's self-dealing because the party that should have been informed was the agent itself albeit in its capacity as principal." *In re Mediators Inc.*, 105 F.3d 822, 827 (2d Cir. 1997); *see In re Lehr Constr. Corp.*, 528 B.R. at 610 ("If the sole shareholder's conduct defrauded the corporation consistent with the adverse interest exception, it would be nonsensical to refrain from imputing the agent's acts of fraud to the corporation ... because the agent is identical to the corporation.") (citation omitted) (internal quotation marks omitted).

Applying these principles, the Court concludes that the Trustee's unjust enrichment claim, as pleaded in count X of the Complaint, is barred by the *Wagoner* rule and the doctrine of *in pari delicto*. First, Mr. Kossoff's conduct is imputed to the Debtor. The Complaint alleges that Mr. Kossoff's misconduct occurred within the scope of his employment by pleading that part of Mr.

17

Kossoff's job was to hold funds in trust for his clients and ensure the funds were not disbursed without permission from the relevant parties. *See* Complaint § IV. It was in carrying out (or failing to carry out) this responsibility that Mr. Kossoff committed the misconduct targeted in the Complaint. As such, Mr. Kossoff's conduct is imputed to the Debtor. *See Kirschner*, 15. N.Y.3d at 465–66 ("When corporate officers carry out the everyday activities central to any company's operation and well-being—such as issuing financial statements, accessing capital markets, [and] handling customer accounts[…]—their conduct falls within the scope of their corporate authority […] [a]nd where conduct falls within the scope of the agents' authority, everything they know or do is imputed to their principals.") (citation omitted).

Second, the Complaint pleads facts that lead to a strong inference if not inescapable conclusion that the Debtor's misconduct is *at least* equal in fault to the Movants' alleged misconduct. The Complaint alleges that Mr. Kossoff orchestrated a criminal scheme, to which he pleaded guilty, to defraud the Debtor's clients, whereas, taking all of the allegations in the Complaint as true, the Movants could at most be considered passive beneficiaries of the criminal scheme due to their alleged receipt of funds that Mr. Kossoff misappropriated. There are no facts alleged that would support an inference that the Movants were involved in Mr. Kossoff's scheme to the extent necessary to consider the Movants equally at fault.

Despite the Opposition's contentions, the adverse interest exception does not bar the imputation of Mr. Kossoff's wrongdoing to the Debtor. Whether Mr. Kossoff had totally abandoned the interests of the Debtor—as is required to utilize the adverse interest exception— becomes irrelevant in light of the sole actor rule. The Complaint alleges in paragraphs 1 and 13 that Mr. Kossoff is the sole member of the Debtor. Via the sole actor rule, applicable to both the *Wagoner* and *in pari delicto* analyses, Mr. Kossoff's misconduct is imputed to the Debtor due to

his role as the sole member and manager of the Debtor. Thus, because Mr. Kossoff's misconduct is at least equal to the alleged misconduct of the Movants, and because Mr. Kossoff's misconduct is imputed to the Debtor, the doctrine of *in pari delicto* and the *Wagoner* rule bar the Trustee's unjust enrichment claim. Count X of the Complaint is dismissed.

## CONCLUSION

For the reasons stated above, the Court denies the Motion, except with respect to the unjust enrichment claim, which is hereby dismissed.

It is so ordered.

Dated: New York, New York
       April 19, 2024

                                            *s/ David S. Jones*
                                            Honorable David S. Jones
                                            United States Bankruptcy Judge